# UNITED STATES DISTRICT COURT
## District of Kansas

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                    Case No.  <u>16-CR-10141-01-EFM</u>

CURTIS WAYNE ALLEN,

      Defendant.

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS COUNT 4 FOR FAILURE TO STATE AN OFFENSE
### (Re.:  Doc. 123)

APPEARS NOW the United States of America, by and through Thomas E. Beall, United States Attorney for the District of Kansas, Anthony W. Mattivi, Assistant United States Attorney for the District, David P. Cora, Trial Attorney, Counterterrorism Section of DOJ's National Security Division, and Risa Berkower, Trial Attorney, Criminal Section of DOJ's Civil Rights Division, and offers the following response to the motion by defendant Curtis Wayne Allen asking the Court to dismiss Count 4 under the U.S. Court of Appeals for the Tenth Circuit's recent panel decision in *United States v. Pauler*, No. 16-3070, 2017 WL 2233740 (10th Cir. May 23, 2017).

The government opposes the motion to dismiss, but recognizes that, so long as the *Pauler*

decision remains extant, it is controlling on this Court and defendant Allen's motion can be granted on that basis. The government's present understanding is that the Appellate Section of DOJ's Criminal Division is contemplating a petition for panel rehearing in *Pauler*. If this Court elects to grant defendant Allen's motion to dismiss Count 4, it is possible that the government will take an interlocutory appeal, which would prevent this case from going to trial on the other Counts during the pendency of that appeal, but would not disable this Court from issuing discovery orders and dealing with other collateral matters in preparation for trial. *See, e.g.*, *Garcia v. Burlington Northern R. Co.*, 818 F.2d 713, 721 (10th Cir. 1987). It does not appear at this juncture that an interlocutory appeal would in fact delay the start of trial substantially, insofar as it presently appears that trial is not likely to commence until early 2018.

So that this Court can evaluate the basis on which the government opposes the motion to dismiss, the government outlines below the reasons why it believes *Pauler* was wrongly decided, noting that many of these arguments were not treated in the panel's decision, perhaps because they were not raised until oral argument (although they will be raised in a petition for panel rehearing, if such a petition is filed).

## 1.  Facts

### *United States v. Pauler*

Defendant Alexander J. Pauler was charged with possessing a firearm after having been convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. § 922(g)(9). The district court denied his motion to dismiss the indictment, in which Pauler argued that his prior misdemeanor domestic-violence conviction did not trigger the firearm disqualification because it involved a violation of a municipal ordinance, not a State-code offense, and municipal ordinances

are not covered by the definition of "misdemeanor crime of domestic violence."  18 U.S.C. § 922(g)(9).  On appeal after a conditional guilty plea, the Tenth Circuit reversed and remanded for dismissal of the indictment on the ground that the pertinent statutory definition —"a misdemeanor under Federal, State, or Tribal law" (18 U.S.C. § 921(a)(33)(A)(i))—does not include a misdemeanor violation of a municipal ordinance.

*Motion to Dismiss*

In 2009, Pauler was convicted in Wichita, Kansas, municipal court, after a *nolo contendere* plea, of a misdemeanor domestic-violence offense in violation of a city ordinance that applies to "[a]ny person who, within the corporate limits of the city, (1) intentionally or recklessly causes bodily harm to a family or household member or a domestic partner . . . ."  Wichita Code § 5.10.025(a)(1).

In March 2014, Pauler was stopped by Wichita police after an altercation at a party and was found in possession of a firearm.  He was charged by federal indictment with possession of a firearm after having been convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. § 922(g)(9).  *Pauler*, 2017 WL 2233740, at *1.  That subsection provides that it is

> unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

The definitional provision, 18 U.S.C. § 921(a)(33)(A)(i), provides in pertinent part that, "as used in this chapter . . . [e]xcept as provided in subparagraph (C) [nonexistent], the term 'misdemeanor crime of domestic violence' means an offense that – (i) is a misdemeanor under Federal, State, or

Tribal law . . . ."[1]

Pauler filed a motion to dismiss the indictment for failure to state an offense, arguing that the definitional phrase, "a misdemeanor under Federal, State, or Tribal law," does not include violations of local law. The district court denied the motion. It reasoned that the definitional phrase was ambiguous whether it was intended to encompass local ordinances, but that ambiguity was resolved by considering the broad purposes of the firearm prohibition and that other provisions of the firearm prohibition of Section 922(g) extend to applications of local law, such as the Section 922(g)(8) prohibition applying to persons subject to civil domestic protection orders, which includes orders issued by municipal courts pursuant to municipal ordinances. *Pauler*, 2017 WL 2233740, at *2-4. Pauler entered a conditional guilty plea, and the court sentenced him to

---

[1]   Section 921(a)(33) provides in full:

(A) Except as provided in subparagraph (C) [nonexistent], the term "misdemeanor crime of domestic violence" means an offense that –

(i) is a misdemeanor under Federal, State, or Tribal law; and

(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

(B)(i) A person shall not be considered to have been convicted of such an offense for purposes of this chapter, unless--

(I) the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case; and

(II) in the case of a prosecution for an offense described in this paragraph for which a person was entitled to a jury trial in the jurisdiction in which the case was tried, either

(aa) the case was tried by a jury, or

(bb) the person knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise.

(ii) A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

probation.  He appealed the conviction.

*Appeal*

In a published opinion issued on May 23, 2017, the Tenth Circuit (Briscoe, McKay, Baldock, JJ.) reversed Pauler's conviction and remanded with directions to dismiss the indictment. *Pauler*, 2017 WL 2233740, at *4.  The panel accepted Pauler's argument that the plain meaning of the phrase, "Federal, State, or Tribal law," in the definitional provision of Section 921(a)(33)(A)(i) does not include municipal ordinances.

The panel relied on the many instances in Section 922 and elsewhere in the firearm statutes where Congress has explicitly included local law by using the phrase, "violation of Federal, State, or local law," 18 U.S.C. §§ 922(s)(1)(A)(ii), (s)(4), (s)(6)(B), (x)(3)(A)(ii); 923(g)(1)(D), or the phrase, "violation of any State law or any published ordinance applicable at the place" of the regulated activity, 18 U.S.C. § 922(b)(2).  The panel reasoned that if it "were to interpret the term 'State' [as argued by the government], then much of the statute's language would be unnecessary and superfluous, contrary to the 'settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect,' *United States v. Nordic Village, Inc.*, 503 U.S. 30, 36 (1992)."  *Pauler*, 2017 WL 2233740, at *2.  "On the other hand, if we were to interpret the term 'State' to mean something different in § 921(a)(33) than it means in all of the preceding and following subsections, then we would be disregarding another 'normal rule of statutory construction,' the rule that 'identical words used in different parts of the same act are intended to have the same meaning.'"  *Id.* (quoting *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560 (2012)).  Also, "another standard principle of statutory interpretation provides that '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same

Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Pauler*, 2017 WL 2233740, at *3 (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). The panel stated that the government had failed to "cite to any contrary principles of statutory interpretation." *Id*.

The panel rejected the government's argument that the broad statutory purpose of the firearm prohibition should control the interpretation of the scope of Section 922(g)(9).

> [A]s the Supreme Court has recently reiterated, "supply[ing] omissions transcends the judicial function," *Nichols v. United States*, 136 S. Ct. 1113, 1118 (2016), and "[d]rawing meaning from silence is particularly inappropriate . . . [when] Congress has shown that it knows how to [address an issue] in express terms," *Kimbrough v. United States*, 552 U.S. 85, 103 (2007).

*Id*. Finally, the panel also rejected the government's reliance on the scope of the term "any court" in Section 922(g)(9).

> [Section] 922(g)(9)'s reference to 'any court' does not change the fact that the statute consistently uses the term 'State' to refer only to a state itself, not to a state plus all of its municipalities. . . . The issue here is not the type of court involved, but the type of offense, and § 921(a)(33) provides that the only domestic violence convictions that qualify are convictions under "Federal, State, or Tribal law."

*Id*.

### *United States v. Allen*

In Count 4 of the Second Superseding Indictment, the government has charged defendant Allen with unlawful possession of firearms after having been previously convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. § 922(g)(9) and 18 U.S.C. § 924(a). The charge alleges that the sole underlying misdemeanor crime of domestic violence is, as in *Pauler*, a conviction for violating Section 5.10.025(a)(1) of the Wichita Municipal Code in the Municipal Court of Wichita Kansas (Case No. 07C2542). Allen has moved the Court to dismiss

6

Count 4 for failure to state a claim under *Pauler*.  Under the panel's decision in *Pauler*, this misdemeanor domestic-violence conviction in violation of a municipal ordinance does not qualify as a "misdemeanor crime of domestic violence" to trigger the firearm prohibition of 18 U.S.C. § 922(g)(9).

## 2.  Legal Analysis and Argument

The government opposes defendant Allen's motion to dismiss for the following reasons, some of which were not treated in the *Pauler* panel's decision.  The government nonetheless recognizes that because the panel's decision is binding on the Court as long as it remains extant, this Court is constrained to follow it.

Section 922(g)(9) and the accompanying definitional provision of Section 921(a)(33) were enacted in 1996 as part of an omnibus appropriations bill.  Pub. L. 104-208, 110 Stat. 3009-372 (Sept. 30, 1996).  At that time, Black's Law Dictionary defined the term "State law" as "[r]efer[ing] to the laws of a state or ordinances of city or town, all as distinguished from Federal law, which is the supreme law of the land under Art. VI of the U.S. Constitution."  Black's Law Dictionary (6th ed. 1990).  So it was an acceptable usage at the time that that the phrase, "under . . . State . . . law" could be used to refer to both a state criminal code and municipal ordinances, and thus could be used as a synonym for the phrase "State or local law."[2]  *See Yates v. United States*, 135 S. Ct. 1074, 1082 (2015) ("Where the subject matter to which the words refer is not the same

---

[2]  Black's did not include a definition of "state law" in any of the prior editions, and in the next edition it completely changed the definition to provide that "state law" means "[a] body of law in a particular state consisting of the state's constitution, statutes, regulations, and common law."  Black's Law Dictionary (7th ed. 1999).  Nevertheless, the version extant at the time of the 1996 enactment of Section 922(g)(9) and the accompanying definitional provision of Section 921(a)(33) is sufficient to establish that the definition is a possible usage of the phrase "under . . . State . . . law."

in the several places where [the words] are used, or the conditions are different, . . . the meaning well may vary to meet the purposes of the law . . . .") (quoting *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932)); *Tyler v. Cain*, 533 U.S. 656, 657 (2001) ("Although the statute uses the word 'made,' not 'held,' Congress is permitted to use synonyms in a statute . . . and 'made' and 'held' are synonyms in the [28 U.S.C.] § 2244(b)(2)(A) context."); *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 226 (1957) ("[T]he [w]ords 'inhabitant' and 'resident,' as respects venue, are synonymous.") (internal quotation marks omitted).

A principle of statutory construction is that "[a] literal interpretation [of statutory language] should not prevail if it creates a result contrary to the apparent legislative intent and a statute's words are sufficiently flexible to allow a construction which will effectuate legislative intent."  2A J. Singer & S. Singer, Sutherland Statutes and Statutory Construction § 46:7, p. 274 (7th ed. 2014). This principle has application here in light of the possible synonymous meanings of the phrases "under . . . State . . . law" and "State and local law," and the strong legislative purpose of keeping guns out of the hands of domestic abusers, which has been significant in Supreme Court decisions giving a broad interpretation to Section 922(g)(9) and the definitional provision of Section 921(a)(33) in order to effectuate that legislative purpose.

In a trio of cases, the Supreme Court has recognized that the purpose of Section 922(g)(9) is "keeping guns out of the hands of domestic abusers."  *United States v. Hayes*, 555 U.S. 415, 426 (2009); *see United States v. Castleman*, 134 S. Ct. 1405, 1413 (2014); *Voisine v. United States*, 136 S. Ct. 2272, 2278, 2280 (2016).  In each of these cases, the Court has given effect to this purpose by giving a broad construction to the statutory language, despite reasonable arguments for a more restrictive interpretation.

8

In *Hayes*, the Court held that the domestic relationship between the perpetrator and the victim need not be an element of the underlying misdemeanor conviction, despite the statutory circumstance that the required domestic relationship is specified in the provision that defines the requirements for a prior conviction to qualify as a "misdemeanor crime of domestic violence," Section 921(a)(33)(A)(ii).  *Supra* note 1.  The Court was inclined toward the broader construction of the statutory language, in part, by the practical consideration that,

> [c]onstruing § 922(g)(9) to exclude the domestic abuser convicted under a generic use-of-force statute (one that does not designate a domestic relationship as an element of the offense) would frustrate Congress' manifest purpose. . . .  Given the paucity of state and federal statutes targeting domestic violence, we find it highly improbable that Congress meant to extend § 922(g)(9)'s firearm possession ban only to the relatively few domestic abusers prosecuted under laws rendering a domestic relationship an element of the offense.

555 U.S. at 426–427.

In *Castleman*, the Court held that the requirement of the definitional subsection that the prior misdemeanor have, "as an element, the use or attempted use of physical force," Section 921(a)(33)(A)(ii), does not require "violent force," despite the similarity of that phrasing to the "use or attempted use of force" definition of "violent felony" under 18 U.S.C. § 924(e)(2)(B)(i) and the holding in *Johnson v. United States*, 559 U.S. 133 (2010), that such phrasing, in that context, requires "violent force."  The *Castleman* Court was inclined toward the broader construction of the statutory language, in part, by the practical consideration that,

> a contrary reading would have rendered § 922(g)(9) inoperative in many States at the time of its enactment.  The assault or battery laws under which domestic abusers were [ ] routinely prosecuted when Congress enacted § 922(g)(9), and under which many are still prosecuted today, . . . fall generally into two categories: those that prohibit both offensive touching and the causation of bodily injury, and those that prohibit only the latter. . . .  [I]f offensive touching did not constitute "force" under § 921(a)(33)(A), then § 922(g)(9) would have been ineffectual in at least 10 States – home to nearly thirty percent of the Nation's population – at the time of its

enactment.

134 S. Ct. at 1413 (quotations and citations omitted).

And in *Voisine*, the Court held that a prior domestic-violence misdemeanor qualifies even if it has a minimum required mens rea of recklessness, despite case law with respect to the definitions of "crime of violence" under 18 U.S.C. § 16 and "violent felony" under 18 U.S.C. § 924(e) that appeared to indicate that offenses with a minimum mens rea of recklessness did not qualify as either violent felonies or crimes of violence under those provisions. *See Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) ("[T]he use . . . of physical force against the person or property of another," 18 U.S.C. § 16, excludes "merely accidental" conduct.").[3]  Again, the Court in *Voisine* was inclined toward the broader construction of the statutory language, in part, by the practical consideration that the narrower construction

> risks rendering § 922(g)(9) broadly inoperative in the 35 jurisdictions with assault laws extending to recklessness. . . .  Assuming that [such a] provision defines a single crime (which happens to list alternative mental states) – and accepting petitioners' view that § 921(a)(33)(A) requires at least a knowing mens rea – then, under *Descamps v. United States*, . . . 133 S. Ct. 2276 . . . (2013), no conviction obtained under [such a] statute could qualify as a "misdemeanor crime of domestic violence."

136 S. Ct. at 2280.

Approximately half of the states have delegated to at least some municipalities the authority to proscribe misdemeanor criminal offenses and those municipal ordinances are used to

---

[3]   *Leocal* led the courts of appeals to hold that an offense with a minimum *mens rea* of recklessness did not qualify as a crime of violence or a violent felony.  *See, e.g.*, *United States v. Moreno*, 821 F.3d 223, 228 (2d Cir. 2016) ("[R]eckless conduct, does not constitute a crime of violence under [18 U.S.C.] § 16(a), as it does not have 'as an element the use, attempted use, or threatened use of physical force against the person or property of another.'"); *United States v. McMurray*, 653 F.3d 367, 374–375 (6th Cir. 2011) ("[T]he 'use of physical force' clause of the ACCA [18 U.S.C. § 924(e)] * * * requires more than reckless conduct."); *United States v. Zuniga-Soto*, 527 F.3d 1110, 1124 (10th Cir. 2008) (explaining that Guidelines § 4B1.2(a)(1) definition of "crime of violence" is not satisfied by a recklessness mens rea).

prosecute domestic abusers.  Insofar as it is a possible usage of the phrase "under . . . State . . . law" that it includes a reference to state and local law (as is the case for the Black's Law Dictionary definition cited above), and that the purpose of keeping guns out of the hands of domestic abusers would be undermined by an interpretation that misdemeanors under municipal law do not qualify, this is another instance, in line with the undercurrent of *Hayes*, *Castleman*, and *Voisine*, in which "[a] literal interpretation [of statutory language] should not prevail if it creates a result contrary to the apparent legislative intent and a statute's words are sufficiently flexible to allow a construction which will effectuate legislative intent."  *Supra* Sutherland Statutes and Statutory Construction.

At least three aspects of the statutory language and structure support the conclusion that misdemeanor violations of municipal ordinances can qualify as predicates for the firearm prohibition of Section 922(g)(9).

First is the particular phrasing of the relevant provision—"misdemeanor under Federal, State, or Tribal law."  18 U.S.C. § 921(a)(33)(A)(i).  As discussed, a misdemeanor "under" state law is reasonably understood to refer to a misdemeanor violation of any criminal prohibition enacted under state law, which would include municipal ordinances insofar as they are authorized by and limited by state law.  This is consistent with the Black's Law Dictionary definition cited above.

Moreover, the phrasing is comprehensive in the sense that Congress identified all three types of domestic sovereign entities with the power to promulgate criminal law—Federal, State,

and Tribal.[4]  It is consistent with that approach that the phrase should be construed to include all domestic misdemeanor offenses that might be applied to domestic violence.  It is not suggested that the phrase, "under Federal . . . law" excludes, for example, the law of a Federal territory, and likewise "under . . . State . . . law" should not be construed to exclude municipal ordinances.

Second is the scope of other provisions of Section 922(g), which contemplate the relevance of municipal ordinances.  A prime example is Section 922(g)(8), which extends the firearm prohibition to any person who is subject to a "court order" that, *e.g.*, "by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against [an] intimate partner," 18 U.S.C. § 922(g)(8)(C)(ii)—a civil protection order.[5]  There has never been any question that

---

[4]  For federal, *see Abbate v. United States*, 359 U.S. 187 (1959) (federal prosecution can follow state prosecution for the same conduct because they are different sovereigns); *compare Puerto Rico v. Sanchez Valle*, 136 S. Ct. 1863 (2016) (Puerto Rico and the Federal government are not separate sovereigns for purposes of the Double Jeopardy Clause and therefore successive federal and Puerto Rico prosecutions for the same conduct are not permissible); *Puerto Rico v. Shell Co.*, 302 U.S. 253 (1937) (successive prosecutions by federal and territorial courts are not permissible because only one sovereign is involved).  For states, *see Heath v. Alabama*, 474 U.S. 82 (1985) (each state is an independent sovereign for purposes of the Double Jeopardy Clause, so sequential prosecutions by multiple states for the same conduct is permissible); *Bartkus v. Illinois*, 359 U.S. 121 (1959) (state prosecution can follow federal prosecution for the same conduct); *compare Waller v. Florida*, 397 U.S. 387 (1970) (a municipality and the State of which it is a political subdivision cannot bring successive prosecutions for the same conduct because only one sovereign is involved).  For tribal, *see United States v. Wheeler*, 435 U.S. 313 (1978) (when tribe prosecutes a member of the tribe it is exercising a never-surrendered tribal sovereignty that is distinct from the Federal sovereign, so a federal prosecution for the same conduct may follow); *United States v. Lara*, 541 U.S. 193 (2004) (when Congress restores to the tribe a prosecutorial authority previously extinguished, the tribe exercises that authority in its sovereign capacity so that sequential tribal and federal prosecutions for the same conduct are permissible).

[5]  That Section applies the firearm prohibition to a person:

> who is subject to a court order that –

> (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;

> (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

> (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury[.]

such an "order" can be issued by a municipal court under municipal law.  There is no rationale that is consistent with the legislative purpose of Section 922(g)(9) why Congress would seek to keep guns out of the hands of a person who was restrained by such a municipal court order, yet would not have intended to extend the prohibition to a person convicted under municipal law of actually using or threatening to use force against an intimate partner.

Also, Section 922(g)(2) extends the firearm prohibition to a "fugitive from justice," 18 U.S.C. § 922(g)(2), which is defined to mean "any person who has fled from any State to avoid prosecution for a crime or to avoid giving testimony in any criminal proceeding," 18 U.S.C. § 921(a)(15).  On the face of that definition, that firearm prohibition applies to a person who flees from a "criminal proceeding" in a municipal court pertaining to the violation of a municipal ordinance.  It thus would apply to a person fleeing from a prosecution in municipal court for a domestic-violence misdemeanor.  There is no rationale that is consistent with the legislative purpose of Section 922(g)(9) why Congress would seek to keep guns out of the hands of a person who was fleeing from a prosecution for a misdemeanor under municipal law, yet would not have intended to extend the prohibition to a person convicted of a domestic-violence misdemeanor under municipal law.

Third, Section 922(g)(9) uses the phrase, "convicted in any court" of a misdemeanor crime of domestic violence.  "Any court" is a broad phrase, and there is no rationale that is consistent with the legislative purpose why Congress would have intended "any court" to exclude municipal courts in Section 922(g)(9) while "court order" under Section 922(g)(8) includes municipal courts. The panel in *Pauler* reasoned that "[t]he issue here is not the type of court involved, but the type of offense," which is governed by the definitional provisions of Section 921(a)(33).  *Pauler*, 2017

WL 2233740, at *3.  This suggests the possibility that a municipal court might have jurisdiction to entertain the prosecution of a violation of a state code which, if true, would be a possible way to harmonize the use of the phrase "any court" in Section 922(g)(9) with the broad scope of the phrase "court order" in Section 922(g)(8) if *Pauler*'s construction of the definitional provision of Section 921(a)(33) were correct.  The government is not aware, however, of any jurisdiction in which a state has authorized its municipalities to have concurrent jurisdiction over state-code offenses; those are handled in the state-court system.  Given that context, Congress cannot be deemed to have used the phrase "any court" in the contemplation that some state-code offenses might be prosecuted in municipal courts.

It is true that Congress repeatedly refers in Section 922 to "violation of Federal, State, [and/or] local law,"[6] which specifically includes local law, but Congress used the different phrasing, "under Federal, State, or Tribal law" in defining "misdemeanor crime of domestic violence."  The usual rules of statutory construction, which were applied by the *Pauler* panel, apply a presumption—but not an irrebuttable presumption—in favor of giving the same term in a statute the same meaning and a different term a different meaning.  *See, e.g.*, *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 213 (2001) ("Although we generally presume that identical words used in different parts of the same act are intended to have the same meaning, the presumption is not rigid, and the meaning of the same words well may vary to meet the purposes of the law.") (internal quotation marks, brackets, and citations omitted);[7] *Abbott v. Abbott*, 560

---

[6]  *See* 18 U.S.C. §§ 922(a)(2)(A), (s)(1)(A)(ii), (s)(4), (s)(6)(B), (x)(3)(A)(ii).  The phrase also is used in 18 U.S.C. §§ 923(g)(1)(D) and 70 other sections of Title 18.  A phrase of comparable breadth—"violation of any State law or any published ordinance"—appears in 18 U.S.C. § 922(b)(2), as well as in 18 U.S.C. § 842(e) (explosive materials).

[7]  *See also Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007) ("Although we presume that the same term has the same meaning when it occurs here and there in a single statute, the Court of Appeals mischaracterized that

U.S. 1, 33 (2010) ("In interpreting statutory text, we ordinarily presume that the use of different words is purposeful and evinces an intention to convey a different meaning.").  There are at least three arguments why these general presumptions of statutory construction are inapplicable here.

First, as discussed, the phrase "under . . . State . . . law" is an acceptable synonym for the phrase "State or local law," and "Congress is permitted to use synonyms in a statute." *Tyler v. Cain*, 533 U.S. 656, 657 (2001).  The panel in *Pauler* focused repeatedly on whether the word "State" could possibly have been intended to have different meanings in different sections of the statute.  But the question is not the meaning of "State," but rather the meaning of the phrase, "under . . . State . . . law," and whether that is a possible synonym for the phrase "State or local law."  "State" means the same thing in both phrases.

Second, the rule of statutory construction that Congress should be expected to have intended a different meaning when it has used a different phrase in the same statute should have reduced force where Congress enacted the provision at issue as a separate statute, not part of a general reenactment of the prior provisions that included the "Federal, State, or local law" phrasing.  In effect, these are different statutes, and it is not unreasonable that the different phrases could have the same meaning.  *See Limtiaco v. Camacho*, 549 U.S. 483, 489–490 (2007) (holding that "tax valuation" in 48 U.S.C. § 1423a means "assessed valuation" even though Congress used "assessed valuation" in 48 U.S.C. § 1403); *Lawrence v. Florida*, 549 U.S. 327, 334 (2007)

---

presumption as effectively irrebuttable.") (quotation omitted); *Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 634 (1993) ("Following the usual presumption of statutory interpretation, that the same term carries the same meaning whenever it appears in the same Act, . . . we might expect 'reasonable' in [29 U.S.C.] § 1401(a)(3)(B) to function here just as it did in § 1401(a)(3)(A), to denote a certain range of probability that a factual determination is correct. For several reasons, however, we think it clear that this second presumption of reasonableness functions quite differently.") (citation omitted).

(Although 28 U.S.C. § 2263 and 28 U.S.C. § 2244 use different words, "it is clear that the language used in both sections provides that tolling hinges on the pendency of state review."); *Deal v. United States*, 508 U.S. 129, 134 (1993) ("No one can disagree . . . that Congress sometimes uses slightly different language to convey the same message.") (quotation omitted).

Third, this is not a circumstance in which Congress has created two statutory categories, one in which local law is included and one in which local law is excluded, and the question is into which category the phrase at issue should be put.  Rather, in every instance when Congress has been explicit, it has included local law, so the question is why, contrary to the legislative purpose of "keeping guns out of the hands of domestic abusers," *Hayes*, 555 U.S. at 426, Congress would have intended implicitly to exclude local law when it defined "misdemeanor crime of domestic violence."  There is no rationale consistent with the legislative purpose for Congress to have done so.

In conclusion, given the force of these arguments, the government opposes the motion to dismiss.  But the government recognizes that, so long as the *Pauler* decision remains extant, it is controlling on this Court and defendant Allen's motion can be granted on that basis.  At the same time, however, the government's present understanding is that the Appellate Section of DOJ's Criminal Division is contemplating a petition for panel rehearing in *Pauler*.  On that basis, the government respectfully submits the Court can await the issuance of the mandate in *Pauler,* which would signal the completion of possible further court-of-appeals proceedings in that case.

Respectfully submitted,

THOMAS E. BEALL
United States Attorney

16

*Anthony W. Mattivi*

ANTHONY W. MATTIVI
Assistant United States Attorney
District of Kansas
290 Carlson Federal Building
444 SE Quincy Street
Topeka, KS 66683
Telephone: (785) 295-2850
Anthony.Mattivi@usdoj.gov


*David P. Cora*

DAVID P. CORA
Trial Attorney
Counterterrorism Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 514-7259
David.Cora@usdoj.gov


*Risa Berkower*

RISA BERKOWER
Trial Attorney
Civil Rights Division, Criminal Section
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 305-0150
Risa.Berkower@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the _2nd_ day of June 2017, I caused the foregoing pleading to be filed with the Clerk of the Court, with a true and accurate copy provided to each counsel of record in the case.

*Anthony W. Mattivi*

Anthony W. Mattivi