## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA**,
                    *Plaintiff,*

           **v.**                    Case No. **6:16-cr-10141-EFM-01**

**CURTIS WAYNE ALLEN,**
                    *Defendant.*

---

## DEFENSE MOTION TO COMPEL PRODUCTION OF
## IMPEACHMENT EVIDENCE ABOUT THE CONFIDENTIAL HUMAN
## SOURCE AND UNDERCOVER EMPLOYEE AGENTS

---

Mr. Curtis Allen, joined by Mr. Patrick Stein and Mr. Gavin Wright, asks this Court to order the government to provide any information that may bear on the truthfulness, bias, memory, or perception of government witnesses relating to the government's use of a Confidential Human Source (CHS) and Undercover Employee agents (UCE); or that may undermine the government's theory of its case. The parties have worked through a number of specific requests, and only a few remain unresolved. We ask the Court to grant those requests, as well as order the government to timely produce all information required under the Court's general discovery and scheduling order, *Brady*, *Giglio*, and other obligations as outlined below.

1

## Background

Before the beginning of the alleged conspiracy in this case, the FBI recruited and enlisted the assistance of a man[1] in Garden City, Kansas to be an undercover informant or Confidential Human Source. In 2015, he infiltrated but failed to make a case against others in Western Kansas who are not charged here. Beginning in February 2016, the CHS set his sights on the defendants who became new targets of an FBI investigation.

From April through October 2016, the CHS surreptitiously recorded numerous conversations with the defendants and others, during in-person meetings and over electronic communications. He made the recordings using phones and recording equipment provided to him by the FBI. For his work as a CHS, the government paid him at least $33,387.09 from December 2015 through February 2017.

In September 2016, the FBI and the CHS introduced at least five UCEs to defendant, Patrick Stein. The UCEs, together with the CHS, met with Mr. Stein on at least three occasions. The UCEs never met or had any communications with Mr. Allen or Mr. Wright. Like the CHS, the UCEs recorded the meetings and communications with Mr. Stein. The FBI also

---

[1] The parties are aware of the name and identity of the CHS but agreed to not include his name within filings made to the Court.

utilized surveillance teams on the ground to record these meetings and at least on one occasion used aircraft to surveil and record a meeting from above.

## Argument

The government charged the defendants, inter alia, with a conspiracy that the government actively participated in and facilitated by use of undercover operatives. The government must turn over information that is helpful to the defense, including information about the CHS and UCEs, in time for it to be of benefit to the defense.

The Due Process Clause requires the government to disclose evidence of a prosecution witness's bias.[2] Evidence of bias is always relevant.[3] This includes any potential impeachment evidence, which merits the same

---

[2] *Giglio v. United States*, 405 U.S. 150, 151 (1972) (requiring disclosure of promise that witness "would not be prosecuted if he testified for the government.").
[3] *United States v. Abel*, 469 U.S. 45 (1984).

constitutional treatment as *Brady* exculpatory evidence.[4] It also includes any evidence that may affect the witness's perception and memory.[5]

*Giglio* includes not only impeachment information for use on cross-examination, but information that may *lead to* the discovery of impeachment material.[6] And the material need not be admissible to be subject to disclosure.[7]

### A. Scope of the Request

The defense seeks information related to the credibility of the CHS, UCEs, and other government agents who recruited, handled, directed, and supervised them. The defense has diligently worked with the government to identify discoverable materials and seek production. The following list is narrowly tailored to what requests remain unresolved between the parties:

---

[4] *Bowen v. Maynard*, 799 F.2d 593, 610 (10th Cir. 1986) ("[i]mpeachment evidence merits the same constitutional treatment as exculpatory evidence. Suppression of material which could be used to impeach witnesses violates the Constitution if it deprives the defendant of a fair trial."); *United States v. Robinson*, 39 F.3d 1115 n. 5 (10th Cir. 1994) ("Impeachment evidence, in any event, is weighed no differently than exculpatory evidence.") (citations omitted); *United States v. Abello-Silva*, 948 F.2d 1168, 1179 (10th Cir. 1991) ("[i]mpeachment evidence merits the same constitutional treatment as exculpatory evidence.").

[5] *Davis v. Alaska*, 415 U.S. 308, 316 (1974).

[6] *United States v. Robinson*, 583 F.3d 1265, n.1 (10th Cir 2009).

[7] *Bowen,* 799 F.2d at 612 (10th Cir 1986) ("in the hands of the defense, [the Brady material] could have been used to uncover other leads and defense theories and to discredit the police investigation of the murders"); *United States v. McVeigh*, 954 F.Supp. 1441, 1448 (D. Col. 1997).

4

1. The FBI's written protocols, guidelines, and manuals pertaining to the identification, recruitment, use, and supervision of the CHS; any other guidelines or manuals used by the Kansas USAO or assigned FBI agents who supervised the CHS; and the Attorney General's Guidelines regarding the use of CHSs generally that apply to this particular CHS.

2. The CHS's federal tax returns for the tax years 2015 and 2016.

3. Any and all information relating to the UCEs who will testify at trial, including:

   3.1   Their identity and other identifying information.

   3.2   Any adverse or impeachment material from their employment and personnel files at the FBI or other government agencies.[8]

   3.3   Any notes taken by or about the UCEs regarding their undercover operations, witness interviews, or other actions that might reflect discrepancies, biases, or conflicts.[9]

   3.4   Any mental health, medical issues, drug use (prescribed or otherwise) that may affect the UCE's memory or perception.[10]

---

[8] *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991).

[9] "Material variances in a witness's statements should be memorialized, even if they are within the same interview, and they should be provided to the defense as *Giglio* information." DOJ Memo, Guidance, http://www.justice.gov/dag/discovery-guidance.html; *United States v. Triumph Capital Group*, Inc., 544 F.3d 149, 163 (2d Cir. 2008) ("By suppressing [the agent's] notes of that proffer, the government deprived [the defendant] of exculpatory evidence going to the core of its bribery case against him. Spadoni could have used the proffer notes not merely to support his version of his conversation with Silvester, but also to impeach Silvester's credibility. While the notes did not record Silvester's words, Spadoni could have attributed them to him through cross-examining Silvester, questioning Agent Urso, and if necessary calling Silvester's attorney.. . . .").

[10] *Robinson*, 583 F.3d at 1269-70.

3.5    Any *Giglio* information that affects the credibility of law
       enforcement witnesses, with assurance that the prosecution has
       made diligent inquiry.[11]

The disclosures should include reverse FRE 404(b) information: If the

government knows of any "crimes, wrongs, or acts" that may serve as a

motive, intent, or knowledge, or any information that would negate the

government's accusations, this information should be provided.[12]

Moreover, information that more broadly discredits the government's

factual theory in this case is discoverable. The defense seeks all information

that may discredit the caliber of the investigation or call into question the

government's theory of prosecution, particularly regarding the use of the

---

[11] *Giglio v. United States*, 405 U.S. 150 (1972); U.S. Dept. of Justice, *U.S. Attorneys'*
*Manual*, §9-5.100 (Policy Regarding the Disclosure to Prosecutors of Potential
Impeachment Information Concerning Law Enforcement Agency Witnesses
("Giglio Policy")); *Kyles v. Whitley*, 514 U.S. 419, 437-438 (1995) ("This in turn
means that the individual prosecutor has a duty to learn of any favorable evidence
known to the others acting on the government's behalf in the case, including the
police.").

[12] *United States v. Montelongo,* 420 F.3d 1169, 1174 (10th Cir. 2005) ("Rule 404(b) is
typically used by prosecutors seeking to rely on a criminal defendant's prior bad
acts as proof of 'motive, opportunity, intent, preparation, plan, knowledge,
identity, or absence of mistake or accident' in the crime charged. The Rule is not
so limited in its application, however, and evidence of a witness' other wrongs,
acts, or crimes is admissible 'for defensive purposes if it tends, alone or with other
evidence, to negate the defendant's guilt of the crime charged against him.'"
*Agushi v. Duerr*, 196 F.3d 754, 760 (7th Cir.1999) (annotations and quotations
omitted). This type of evidence is often referred to as "reverse 404(b)" evidence.
*See, e.g., id.*; *United States v. Lucas*, 357 F.3d 599, 605 (6th Cir. 2004).).

CHS or UCEs that has not yet been disclosed. The government "must disclose to the defense the information known to or available to them which may develop doubt about the truth of the government's narrative."[13] So to the extent there is information about the CHS, UCEs, or any other witness that may challenge the government's theory of the case, that is not listed here, it still must be produced to the defense.

## B. Materiality

Too often, in context of *Brady*, only the appellate standard of materiality is invoked – whether it affected the guilt/innocence determination.[14] This is difficult to measure before guilt/innocence is decided. The true responsibility for divulging exculpatory material at trial is described in *U.S. v. Sudikoff*:[15]

> This [appellate] standard is only appropriate, and thus applicable, in the context of appellate review. Whether disclosure would have influenced the outcome of a trial can only be determined after the trial is completed and the total effect of all the inculpatory evidence can be weighed against the presume effect of the undisclosed material . . . The government is obligated to disclose all evidence relating to guilt or punishment which might reasonably be considered favorable to the defendant's case.[16]

---

[13] *McVeigh*, 954 F.Supp.at 1450-51; *Kyles,* 514 U.S. at 439.

[14] *United States v. Buchanan*, 891 F.2d 1436, 1443 (10th Cir. 1989).

[15] 36 F.Supp.2d 1196 (C.D.Cal. 1999).

[16] *Id.* at 1198-99 (internal citations omitted).

Recognizing that it can be difficult to assess the materiality of evidence before trial, prosecutors must err on the side of disclosing exculpatory and impeaching evidence.[17]

The Federal Rules of Criminal Procedure also require production. Specifically, Rule 16(a)(1)(E)(i) requires the disclosure of items "material to preparing the defense[.]" Items are material to defense preparation if they may be used to "counter the government's case or bolster a defense . . . ."[18] If the defendant shows that the information is "material" — that is, "helpful to the defense" — then the government's disclosure obligation is triggered.[19] "The materiality requirement typically is not a heavy burden . . . ."[20]

The requested discovery is material to the preparation of the defense, as follows:

   1. *FBI protocols, guidelines, and manuals pertaining to CHS.*

The FBI case agents recruited, hired, handled, directed, supervised, and paid the CHS. Yet, there has been no discovery about the protocols, guidelines, manuals, or policies that underlie the rules for when the FBI turns a private citizen into an undercover agent of the federal government.

---

[17] *Kyles,* 514 U.S. at 439.

[18] *United States v. Card*, 46 Fed. Appx. 941, 945 (10th Cir. 2002) (unpublished) (quoting *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993)).

[19] *United States v. Jackson*, 850 F.Supp. 1481, 1502-03 (D.Kan. 1994).

[20] *Id.* at 1503 (citations and quotations omitted).

The information sought is limited to the policy and guidelines applicable to this particular CHS, not all other FBI investigations. Whether the CHS and the agents followed or complied with policy, or how the policy impacted their undercover actions and plans, may be fertile grounds for impeachment against the CHS and the agents who handled him. Or it may lead to impeachment material against those witnesses. This information is discoverable. The government denied production of it so the Court should order its production.

2.  *CHS federal tax returns from the tax years 2015 and 2016.*

The FBI paid the CHS at least $33,387.09 from December 2015 to February 2017. This may or may not be a significant amount of money to the CHS. But one can easily assume the CHS was at least in part motivated to be a CHS due to promises that he would financially benefit from his relationship with and actions for the FBI. His finances are thus material to his bias and his tax returns, in the possession of the federal government,[21] will paint the picture of his finances. Likewise, if the CHS failed to report income earned by working as an undercover operative, this may be grounds for impeachment or a basis for which the government may have extended him an offer of immunity or leniency. The government denied production of his tax returns

---

[21] 26 U.S.C. § 6013 provides for disclosure of tax returns as part of a criminal case.

in discovery, stating only that the FBI and DOJ do not possess them. The Court should order their production.

3. *UCE information.*

The UCEs were a critical part of the government's investigation. For example, on October 14, 2016, defendant Stein delivered 300 pounds of urea fertilizer to the UCEs that was later tested by the FBI and will be offered at trial as evidence that one of the defendants possessed materials that could have been used to build a destructive device in furtherance of the charged conspiracy.[22] The recordings made by the UCEs will be offered into evidence.

Yet, the defense has not received any information about the UCEs, and certainly nothing that may be used to challenged their truthfulness, bias, memory, or perception when they testify. Anticipating the government will argue that information about the UCEs cannot be disclosed because they remain in an operational status, the defense is willing to entertain a protective order over the information that can properly balance the constitutional rights of the defendants with the interests of the government to protect its agents and sensitive operations.

---

[22] *See, e.g.*, D.E. 167 at 4-5.

### C.  Agency

The prosecutor's duty to seek possible impeachment information goes beyond the prosecutor's personal knowledge or file.[23] It includes discoverable information about the CHS and UCEs relating to past or subsequent undercover operations conducted by other law enforcement agencies or U.S. Attorneys' Office,[24] and any other federal or state agency that may possess discoverable information.[25]

---

[23] *Buchanan*, 891 F.2d at 1442 ("The good faith or bad faith of the prosecutor has no bearing on the due process inquiry required by *Brady*. Accordingly, whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor. The prosecutor's office is an entity and as such it is the spokesman for the Government. Since . . . investigative officers are part of the prosecution, the taint on the trial is no less if they, rather than the prosecutors, were guilty of nondisclosure. Knowledge by police or investigators is therefore imputed to the prosecution under *Brady*.") (internal citations and quotation marks omitted); *Smith v. Sec'y of New Mexico Dep't of Corr.*, 50 F.3d 801, 828 (10th Cir. 1995) ("the 'prosecution' for *Brady* purposes encompasses not only the individual prosecutor handling the case, but also extends to the prosecutor's entire office,[] as well as law enforcement personnel and other arms of the state involved in investigative aspects of a particular criminal venture."); *United States v. Endicott*, 869 F.2d 452, 456 (9th Cir. 1989) (BATF agent's knowledge of possibly exculpatory evidence attributed to prosecutor).

[24] *Giglio*, 405 U.S. at 154 ("The prosecutor's office is an entity and as such it is the spokesman for the Government. A promise made by one attorney must be attributed, for these purposes, to the Government. To the extent this places a burden on the large prosecution offices, procedures and regulations can be established to carry that burden and to insure communication of all relevant information on each case to every lawyer who deals with it.") (citations omitted).

[25] *Kyles*, 514 U.S. at 437 ("the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the

The government has a burden to actively and affirmatively seek exculpatory and impeaching information. *Brady* disclosure should not be left to the discretion and judgment of the law enforcement agents. Again, from the DOJ in its memorandum Guidance for Prosecutors Regarding Criminal Discovery: "It is the obligation of federal prosecutors, in preparing for trial, to seek all exculpatory and impeachment information from all members of the prosecution team. Members of the prosecution team include federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant."[26]

Finally, the form of the discovery does not matter. Prosecutors are charged with reviewing all communication, including that among agents and prosecutors, for exculpatory or impeaching material. "The obligation to

---

case, including the police."); *Smith*, 50 F.3d at 830 ("it is clear that for *Brady* purposes the knowledge of law enforcement personnel is imputed to the prosecutor…"); *see also* U.S. Dep't of Justice, *U.S. Attorneys' Manual*, § 9-5.001(B)(2) (2014) ("It is the obligation of federal prosecutors, in preparing for trial, to seek all exculpatory and impeachment information from all the members of the prosecution team . . . includ[ing] federal, state, and local law enforcement officers and other government officials participating in . . . the criminal case against the defendant.").

[26] http://www.justice.gov/dag/discovery-guidance.html; *Kyles*, 514 U.S. at 437-438.

disclose information covered by the *Brady* and *Giglio* rules exists without regard to whether that information has been recorded in tangible form."[27]

The information listed above must be disclosed to the defense because it may make the difference between conviction and acquittal.[28] A jury's estimate of the truthfulness or reliability of the CHS, UCEs, and the agents who directed and handled them may turn upon the possible interest and biases of those witnesses.[29]

## Conclusion

The Due Process Clause and Rule 16 require the government to disclose information in its possession that is helpful to the defense. The information sought here concerning the CHS and UCEs is narrowly tailored and material to the preparation of the defense. The Court should order the government to produce it.

---

[27] *United States v. Rodriguez*, 496 F.3d 221, 36 226 (2d Cir 2007).

[28] *Smith,* 50 F.3d at 825 (quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985)).

[29] *Napue v. People of State of Illinois,* 360 U.S. 264, 269 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.").

Respectfully submitted,


s/Melody Brannon
Melody Brannon, #17612
Federal Public Defender for the
District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
melody_brannon@fd.org


s/ Rich Federico
Rich Federico, #22111
Staff Attorney (R&W)
Federal Public Defender
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
rich_federico@fd.org


## CERTIFIFCATE OF SERVICE

I hereby certify that on January 11, 2018, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all interested parties.


s/ Rich Federico
Rich Federico, #22111