IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,
          *Plaintiff*,

      **v.**                 Case No. **6:16-cr-10141-EFM-01**

CURTIS WAYNE ALLEN,
          *Defendant*.

_____

**DEFENDANTS' MOTION TO DISMISS COUNT 2 FOR
CONSTRUCTIVE AMENDMENT, OR IN THE ALTERNATIVE,
TO CONFINE FURTHER EVIDENCE, INSTRUCTIONS AND
ARGUMENTS TO THE CONSPIRACY CHARGED**

_____

Mr. Curtis Allen, joined by Mr. Patrick Stein and Mr. Gavin Wright, and pursuant to the Fifth and Sixth Amendments of the U.S. Constitution, respectfully asks the Court to dismiss Count 2 of the second superseding indictment based on the government's constructive amendment of that charge. If the Court does not grant dismissal then, in the alternative, the Court should confine further evidence, instructions, and arguments to the conspiracy charged.

## Factual Background

On March 16, 2017, the government filed its Second Superseding

Indictment.[1] Counts 1 and 2 of that Superseding Indictment read as follows:

### COUNT 1

Beginning on an unknown date, prior to approximately February 2016 and continuing until on or about October14, 2016, in the District of Kansas, and elsewhere, the defendants, . . . without lawful authority, conspired with each other and with others, to use a weapon of mass destruction, that is, a destructive device as defined by Title 18, United States Code, Section 921, against people and property within the United States, and (a) the mail and a facility of interstate and foreign commerce was used in furtherance of the offense; (b) the property that was the target of the offense was used in interstate and foreign commerce; (c) a perpetrator travelled in and caused another to travel in interstate and foreign commerce in furtherance of the offense; and (d) the offense, and the results of the offense, would have affected interstate and foreign commerce.

All in violation of Title 18, United States Code, Sections 2 & 2332a(a)(2).

### COUNT 2

Beginning on an unknown date, prior to approximately February 2016 and continuing until on or about October14, 2016, in the District of Kansas, and elsewhere, the defendants . . . knowingly and willfully combined, conspired, and agreed with each other and with others to injure, oppress, threaten, and intimidate the residents of 312 West Mary Street in the free exercise and enjoyment of rights and privileges secured to them by the laws and Constitution of the United States; that is, the right to sell, purchase, rent, and occupy a dwelling without injury, intimidation, and interference because of race, national origin, and religion.

---

[1] *See* Docket Entry (D.E.) 89.

All in violation of Title 18, United States Code, Section 241.[2]

Up until the brink of trial, the defense prepared with the understanding that the alleged conspiracy to use a weapon of mass destruction against residents of 312 West Mary Street served as the basis of the conspiracy in Count 1 and Count 2. Proposed Defense Jury Instruction No. 9 provides a clear example of the defense's interpretation of Count 2—it includes as a required element that "the defendant knowingly conspired with another to injure, oppress, threaten, intimidate one or more residents of 312 West Mary Street by use of a weapon of mass destruction."[3]

The defense's understanding that the conspiracy to use a weapon of mass destruction (as alleged in Count 1) also served as the basis of the conspiracy underlying Count 2 derived from the plain language of the indictment itself, when read as a whole, and from the government's repeated reliance on a singular conspiracy throughout this case, from detention hearings to pretrial motions litigation leading up to trial. Just by way of

---

[2] D.E. 89, at 2-3.

[3] D.E. 320, at 12-13; *see also id.* at 14 (Proposed Defense Jury Instruction No. 10, "Evidence of Multiple Conspiracies"—"You must determine whether the single conspiracy, as charged in the indictment, existed, and if it did, whether each defendant was a member of it. Proof of several separate conspiracies is not proof of the single, overall conspiracy charged in the indictment . . . .").

example, reference to the singular conspiracy peppers the "Government's Response to Defendant's Motion for Pretrial Determination of Admissibility of Co-Conspirator Statements," which was filed on January 22, 2018.[4]

It was not until the brink of this six-week trial, however, that the defendants learned of the government's intent to seek convictions based on different conspiracies in Counts 1 and 2. Just seven days before trial was to commence, and just shy of a year after filing its second superseding indictment,[5] the government filed a bench memo[6] asserting for the first time that the basis for the conspiracy charged in Count 2 was not limited to the single conspiracy to use a weapon of mass destruction that had been litigated over the past year, but rather was much broader, to include "other plans" to violate any "federally protected housing rights":

> [Count 2] includes, but is not limited to, the defendants' plot to bomb the Mary Street building, as well as their other plans to injure, intimidate, and interfere with the fair housing rights of the residents at that address because of their race, national origin, and/or religion . . . . [as] guaranteed by the Fair Housing Act . . . . 42 U.S.C. § 3601 *et seq*."[7]

---

[4] *See, e.g.,* D.E. 224, at 2 ("In this case, the charged conspiracy lasted for many months."); *id.* at 2, fn. 1 ("As charged in the Second Superseding Indictment, the conspiracy started in approximately February 2016 and continued until on or about October 14, 2016.").

[5] D.E. 89 (filed March 16, 2017).

[6] D.E. 291 ("Government's Bench Brief Regarding the Civil Rights Conspiracy Charged in Count Two") (filed March 12, 2018).

[7] D.E. 291, at 2.

At the motions hearing held on March 19, 2018, the day before trial commenced, the defense alerted the court to their surprise and concern regarding the government's intent to expand Count 2 beyond the conspiracy to use a weapon of mass destruction and to now include any alleged "other" conspiracy by the defendants to violate the residents' rights secured under the Fair Housing Act. The Court noted the defense's concerns during that hearing, acknowledging that the government had not recited nor referenced the Fair Housing Act in the indictment.

The government's proposed jury instruction No. 17, "Count 2: Elements - Purpose of the Conspiracy," filed shortly thereafter solidified the government's intention to elicit convictions under Count 2 by casting a wide net that incorporated any alleged "other plan" by the defendants to violate any one of a multitude of rights even tangentially associated with "federally protected housing rights."[8]

---

[8] D.E. 321, at 26-27 ("The protected federal right involved in this case is the right, guaranteed by the laws of the United States, of every person in this country to occupy his or her home without intimidation or interference because of race, national origin, or religion. This guarantee encompasses all of the rights normally associated with a person's occupation of a home, such as the right to have company over and to live without fear or intimidation. The law likewise guarantees that everyone in the United States may sell, purchase, or rent a dwelling without anyone involved in the transaction experiencing threats, intimidation, or physical harm because of race, national origin, or religion.").

Throughout the trial, the government put forward evidence, over defense objection,[9] that defendants discussed numerous persons and organizations beyond the residents of 312 W. Mary. For example, the government played several audio clips made by a paid informant of defendants discussing the landlord, by name, who rents the property to the tenants at 312 W. Mary. But there has been no evidence that the landlord was "targeted" based upon his race, national origin, or religion.

Because the government is now eliciting convictions under Count 2 based on elements (and a statute) not referenced in the indictment nor provided to the defense with sufficient notice, the defense respectfully asks the Court to dismiss Count 2 as fatally defective. In the alternative, the defense requests that the Court confine further evidence, instructions, and arguments to the single conspiracy charged.

The defense acknowledges that the issue of a constructive amendment rendering Count 2 fatally defective arose briefly during the Rule 29 conference on April 10, 2018. The defense file this pleading to supplement their oral motion to dismiss Count 2 on that basis. Additionally, because the defendants were not on notice of the governments' intentions to broaden the

---

[9] The primary objections to this evidence were made and overruled during the *James* hearing held in this case.

indictment before the brink of trial,[10] and because a constructive amendment of the indictment would require automatic reversal of any conviction on Count 2,[11] the defense respectfully assert that the Court may address this issue at any time prior to instructing the jury.

## Legal Argument and Authorities

### *Legal Principles*

"It is a fundamental precept of federal constitutional law that a 'court cannot permit a defendant to be tried on charges that are not made in the indictment.'"[12] This protection is rooted in the Sixth Amendment's guarantee that the accused shall be informed of the nature and cause of the accusations

---

[10] Fed. R. Crim. P. 12(c)(3).

[11] As set forth *infra*, a constructive amendment of the indictment constitutes per se reversible error. Thus, the issue cannot be waived by a defendant's failure to object to the government's introduction of evidence, or even by the defendant's failure to object to an erroneous instruction that impermissibly broadens the charge. *See, e.g., Hunter v. New Mexico*, 916 F.2d 595, 598 (10th Cir. 1990) (fact that defense counsel did not object to erroneous instruction irrelevant because a constructive amendment of the charge is "reversible per se") (reversed and remanded); *see also United States v. Farr*, 536 F.3d 1174, 1184-85 (10th Cir. 2008) (no prejudice need be shown where constructive amendment of the indictment denied defendant "the right to present the defense based on the indictment the government gave him, and which he pursued through much of trial") (reversed and remanded).

[12] *Hunter*, 916 F.2d at 598 (quoting *Stirone v. United States*, 361 U.S. 212, 217 (1960)).

filed against him, as well as the Fifth Amendment right to be tried on only those charges returned by a grand jury.[13]

A federal indictment serves to safeguard these fundamental rights. In *United States v. Russell*,[14] the U.S. Supreme Court set forth the essential criteria for measuring the sufficiency of an indictment, which the Tenth Circuit has adopted: "First, the indictment must contain the elements of the offense and sufficiently apprise the defendant of what he must be prepared to meet[.]"[15] A corollary purpose of this requirement "is that the indictment inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction."[16] Second, the indictment "must be such as to show to what extent [the defendant] may plead a former acquittal or conviction as a bar to further prosecution for the same cause."[17] Lastly, "and of paramount importance, a sufficient indictment is required to

---

[13] U.S. Const. amends. V, VI; *Russell v. United States*, 369 U.S. 749, 763-64 (1962); *Stirone v. United States*, 361 U.S. 212, 218-19 (1960) ("The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment."); *Hunter*, 916 F.2d at 598.

[14] 369 U.S. 749 (1962).

[15] *United States v. Radetsky*, 535 F.2d 556, 562 (10th Cir. 1976), *overruled on other grounds by United States v. Daily*, 921 F.2d 994, 1004 & n.11 (10th Cir. 1990) (internal citations omitted).

[16] *Id.*

[17] *Id.*

implement the Fifth Amendment guaranty and make clear the charges so as to limit a defendant's jeopardy to offenses charged by a group of his fellow citizens, and to avoid his conviction on facts not found, or perhaps not even presented to the grand jury that indicted him . . . ."[18]

Given the purpose of an indictment and the fundamental constitutional rights at play, "[i]t is axiomatic that 'all the material facts and circumstances embraced in the definition of the offence must be stated or the indictment will be defective."[19]

In accordance with this axiom and *Russell's* mandate, the Tenth Circuit has instructed that "court[s] should dismiss an indictment if it does not 'contain[] the elements of the offense intended to be charged.'"[20]

Dismissal is necessary under such circumstances because "a court cannot by implication add an essential element to the indictment" without

---

[18] *Id.*

[19] *United States v. Kilpatrick*, 821 F.2d 1456, 1462 (10th Cir. 1987) (quoting *United States v. Hess*, 124 U.S. 483, 486 (1888)); *see also Russell*, 369 U.S. at 763-64 (an indictment must contain the essential elements of the offense intended to be charged, sufficiently apprise the accused of what he must be prepared to defend against, and permit the accused to plead a judgment under the indictment as a bar to any subsequent prosecution for the same offense).

[20] *Id.* (quoting *Russell*, 369 U.S. at 763)).

violating the defendants' rights secured by the Fifth and Sixth Amendments.[21]

Moreover, dismissal is required because per se reversible error results in the alternative. When the evidence presented at trial, together with the jury instructions, broadens the grand-jury's charge and "actually modifies an essential element of the offense charge," it raises the impermissible possibility that the defendant was convicted of an offense other than that charged in the indictment.[22] Under this scenario, known as a constructive amendment, the error is "reversible per se."[23] The modification of an essential element of the offense deprives a defendant of notice, and permits a jury to convict a defendant on a charge that effectively altered the substance of the grand jury's indictment, in violation of the defendant's fundamental constitutional rights.[24]

---

[21] *Id.* at 1463.

[22] *Hunter*, 916 F.2d at 599 (quoting *United States v. Apodaca*, 843 F.2d 421, 428 (10th Cir.), *cert. denied*, 488 U.S. 932 (1988)).

[23] *Hunter*, 916 F.2d at 599 ("A variance which rises to the level of a constructive amendment is reversible per se."); *see also Farr*, 536 F.3d at 1184-86.

[24] *Hunter*, 916 F.2d at 599.

### *Application of these legal principles to this case*

By expanding the scope of Count 2 to incorporate any "other plan" by the defendants to interfere with the fair housing rights of the residents at 312 West Mary, as secured under the FHA, and to any other persons or organizations beyond the residents, rather than limiting the charge to the civil rights conspiracy to use a weapon of mass destruction, the government has constructively amended Count 2—that is, the government has impermissibly expanded the grand-jury's charge and the bases upon which the jury may rest a conviction.

When determining whether a constructive amendment will occur, the "specific inquiry is whether the jury [will be] permitted to convict the defendant upon a set of facts distinctly different from that set forth in the indictment."[25] Here, the second superseding indictment provided notice to the defendants that the grand jury returned the charge of conspiracy to use a weapon of mass destruction in Count 1, and the charge of conspiracy "to injure, oppress, threaten, and intimidate the residents of 312 West Mary Street in the free exercise and enjoyment of rights and privileges secured to them by the laws and Constitution of the United States; that is, the right to

---

[25] *Hunter*, 916 F.2d at 599 (internal quotations omitted).

sell, purchase, rent, and occupy a dwelling without injury, intimidation, and interference because of race, national origin, and religion" in Count 2.

Importantly, the language in Count 2 narrowed the charge to only the right "to sell, purchase, rent, and occupy a dwelling without injury, intimidation, and interference." It is not *any* right secured by the rights and privileges secured to these residents by the laws and Constitution of the United States that the jury may now consider, but only those rights specifically found by the grand jury and pled in the indictment.

The Tenth Circuit has repeatedly reiterated that an "indictment should be read as a whole and interpreted in a common-sense manner."[26] Based on the charging document when read as a whole, the defense understood that the conspiracy as alleged in Count 1 (to use a weapon of mass destruction) was also the factual basis underlying the conspiracy charged in Count 2. And the defense cannot be faulted for this interpretation of the grand-jury's charge. Up until the brink of trial, the government solidified the defense's interpretation of the indictment by repeatedly relying on, and referring to, "the charged conspiracy." The indictment itself provided no notice of the grand-jury's factual bases for the myriad "other plans" that the government now alleges; thus, the defendants were provided no notice that the grand jury

---

[26] *Kilpatrick*, 821 F.2d at 1462.

charged them with any conspiracy other than the conspiracy to use a weapon of mass destruction against the residents of 312 West Mary.

It is now clear, however, that the government intends to elicit convictions on Count 2 not only on factual bases other than the conspiracy to use a weapon of mass destruction, but also on allegations that the defendants' conspired to violate rights secured under the Fair Housing Act, which were neither referenced nor was the governing statute recited in the indictment.

Moreover, the government has repeatedly elicited evidence at trial that defendants conspired to target persons for reasons that have nothing to do with those persons' "race, national origin, and religion." For example, the government has presented evidence that "landlords" were "targets" of the conspiracy in Count 2. The government put forward this evidence, over defense objection, as relevant to Count 2. But no evidence has been elicited that the landlords were targeted based upon race, national origin, or religion. Rather, they were "targeted" based upon their economic activity, which is not a protected class.

In *Hunter*, the Tenth Circuit held that reversible error occurred where the jury was allowed to convict the defendant "on a different set of facts than

those set forth in the information."[27] Specifically, the jury in *Hunter* was permitted to convict the defendant of first-degree criminal sexual penetration based either on evidence that the defendant "engaged in sexual intercourse" as charged in the indictment, or based on "digital penetration," which was not charged in the indictment but included in the jury's instructions.[28] The Tenth Circuit found that the instructional error, when combined with the evidence at trial, constituted a constructive amendment, reaffirming that "[j]ury instructions may not include an element of an offense if that element was not charged in the indictment." The *Hunter* court made certain that where an amendment "effectively alter[s] the substance of the indictment," a conviction cannot stand.[29]

---

[27] 916 F.2d at 599

[28] *Id*. at 597 (while the information charged that the defendant "unlawfully and intentionally *engaged in sexual intercourse*," the jury instruction read that "The defendant caused [the woman] to engage in sexual intercourse, *or caused the insertion, to any extent, of his penis or finger or fingers* into [her] vagina . . . .") (emphases in original).

[29] *Id*. at 599 (finding that the error was plain and the harm cannot be retrospectively cured: "Assuming that the jury based its verdict on the evidence of sexual intercourse . . . cannot cure this amendment because it requires us, as an appellate court, to presume the jury's thinking. This we cannot do."); *see also United States v. Adams,* 778 F .2d 1117, 1123 (5th Cir. 1985) (constructive amendment occurred where defendant charged with using license with a false name but possibly convicted only on use of a false address).

Likewise, and more recently in *Farr*, the Tenth Circuit found that a constructive amendment of the charging instrument required automatic reversal of the defendant's conviction and that no prejudice need be shown.[30] The Tenth Circuit determined in *Farr* that the evidence at trial, in addition to the contested jury instruction, permitted the defendant to be convicted on a basis not alleged in the indictment: "that instruction, by dictating to the jury that the trust fund recovery penalty and the quarterly employment taxes are the same thing, effectively allowed the jury to convict Ms. Farr for failing to pay *either* the clinic's quarterly employment taxes purportedly 'due and owing by her' *or* the trust fund recovery penalty assessed personally against her."[31] "That is, the district court essentially allowed the jury to consider two possible bases for conviction-the flawed one outlined in the indictment and another more accurate one added at trial.[32] The Tenth Circuit reversed the defendant's conviction, noting that the deprivation of her Sixth Amendment to notice, as well as her Fifth Amendment right to have the grand jury make the charge on its own judgment, are far too serious to be dismissed as harmless error.[33]

---

[30] *Farr*, 536 F.3d at 1184-86.

[31] *Id*. at 1180-81.

[32] *Id*.

[33] *Id*. at 1184-85.

The circumstances of this case are no different. If the jury is permitted to, and if it does, return a guilty verdict on Count 2 under the government's broadened bases of the conspiracy, a reviewing court will not know whether the jury convicted the defendant based on the conspiracy to use a weapon of mass destruction at 312 West Mary to violate the residents' rights "to sell, purchase, rent, and occupy a dwelling without injury, intimidation, and interference" as charged in the indictment, or whether the jury determined that the defendant conspired to carry out a different plan to interfere with any one of the residents' rights secured under the Fair Housing Act.

As set forth above, and in accordance with *Russell*, dismissal is necessary where an indictment fails to contain the elements of the offense intended to be charged.[34] The Tenth Circuit has previously recognized the need for indictments to provide clarity and precision in conspiracy cases because of "the possibility, inherent in a criminal conspiracy charge, that its wide net may ensnare the innocent as well as the culpable."[35] The government's indictment, as returned by the grand jury, failed to apprise the defendants of the charge of which the government now seeks to convict the

---

[34] *Kilpatrick*, 821 F.2d at 1462 (quoting *Russell*, 369 U.S. at 763).

[35] *Kilpatrick*, 821 F.2d at 1462 (quoting *Dennis v. United States*, 384 U.S. 855, 860 (1966)).

defendants. Just as in *Farr*, "it is not an unfair characterization of the situation to say that counsel was denied . . . the right to present the defense based on the indictment the government gave him, and which he pursued through much of trial."[36]

In denying the defense's Rule 29 motion, the Court held the language of the indictment "laws and Constitution of the United States" was sufficient to put the defense on notice that the specific law they were charged with conspiring to violate was "secured" by the Fair Housing Act. But the Fair Housing Act is a distinct statute, with a punitive provision,[37] that was not referenced at all in the indictment. In oral argument on the Rule 29 motion the government stated that Count 2 is a civil rights conspiracy charge with an "underlying" Fair Housing Act violation. The government cannot import punitive statutes into a charge that were not put before the grand jury, nor included in the plain language of the indictment. This is exactly the prosecutorial tactic the Tenth Circuit has held to be reversible error.

If permitted to go to the jury as proposed, the government's constructive amendment of the indictment will have violated the defendant's Sixth Amendment right to notice of the offense for which they were to defend

---

[36] 536 F.3d at 1184.

[37] 42 U.S.C. § 3631.

against, as well as their Fifth Amendment right to be tried only on those charges returned by a grand jury. Any conviction on Count 2 based on the government's broadened bases would require automatic reversal of the conviction. For these reasons, the defendants respectfully ask that the Court to dismiss Count 2.

In the alternative, the defendants ask that the Court confine further evidence, instructions, and arguments to the conspiracy charged to avoid a constructive amendment of Count 2.

### Conclusion

For these reasons, defense asks the Court to dismiss Count 2 of the second superseding indictment. In the alternative, defense asks the Court to confine further evidence, instructions, and arguments to the conspiracy charged.

> Respectfully submitted,
>
> s/ Melody Brannon
> MELODY BRANNON, #17612
> Federal Public Defender for the
> District of Kansas
> 117 SW 6th Avenue, Suite 200
> Topeka, Kansas 66603-3840
> Phone: 785-232-9828
> Fax: 785-232-9886
> Email: melody_brannon@fd.org

s/ Rich Federico
RICH FEDERICO, #22111
Staff Attorney (R&W)
Federal Public Defender
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Email:rich_federico@fd.org

## CERTIFICATE OF SERVICE

I certify that on April 12, 2018, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all interested parties.

s/ Melody Brannon
MELODY BRANNON, #17612

s/ Rich Federico
RICH FEDERICO, #22111