IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**
*Plaintiff,*

v.   Case No. **6:16-cr-10141-EFM-01**

**CURTIS WAYNE ALLEN,**
*Defendant.*

**DEFENDANT CURTIS WAYNE ALLEN'S RESPONSE TO
GOVERNMENT'S NOTICES OF ADDITIONAL AUTHORITIES**

Curtis Allen, joined by co-defendants Patrick Stein and Gavin Wright, responds to the additional authorities filed by the government relating to the Court's determination as to whether the "terrorism enhancement" under Guideline § 3A1.4 applies in this case. As briefed and argued by the parties, the central thrust of the dispute is whether the government has carried its burden to prove that the conspiracies were "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct."[1] The additional authorities submitted by the government do nothing to settle the issue in the government's favor.

First, the government's additional authorities confirm our argument that this is a novel issue within the Tenth Circuit. None of the cases submitted by the government are from the Tenth Circuit, so they are not controlling authority. Of the

---

[1] 18 U.S.C. § 2332b(g)(5)(A).

1

ten cases cited, the government only submitted case documents for three of them, including three transcripts of sentencing hearings. Transcripts of sentencing hearings, which did not even analyze the issue before the Court here, hold little value as persuasive authority. As explained below, if these cases have any persuasive value, they all support the defense argument that the terrorism enhancement does not apply in this case.

Second, the government submitted ten cases because it said these were cases where a court imposed the terrorism enhancement "where the defendants' underlying conduct was an attack on civilians."[2] This argument miscasts the issue before the Court.

There are no Tenth Circuit cases that apply the terrorism enhancement when the defendants' target was not government persons or property. But for purposes of the terrorism enhancement, the target only matters if it is evidence of the intent of the defendant.[3] Put differently, the target must be part of the proof that the predominant intent of the defendant was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct."[4]

---

[2] D.E. 470 at 1.

[3] *United States v. Wright*, 747 F.3d 399, 408 (6th Cir. 2014) (citations omitted).

[4] *Supra* note 1.

During oral argument, the government cited only the *Mohamud* case from the District of Oregon as a case where only "civilians" were the target. A closer examination of the *Mohamud* case shows the differences between cases where the terrorism enhancement applied for reasons that are not present in our case. If the *Mohamud* case has any persuasive value for the Court, it significantly favors the defense position.

## I. *United States v. Mohamud* – District of Oregon

The government offered this case because the defendant "attempted to kill civilians by detonating bomb at public Christmas Tree lighting ceremony."[5] *Mohamud* did not distinguish between civilians and government persons and property; he intended to use a weapon of mass destruction at a public event at the Pioneer Courthouse Square in Portland because he wanted to wage violent jihad in the United States to retaliate for the government's foreign policy.[6]

The defendant here targeted all "kuffar," or those who were not believers in Islam and his crimes arose from his intense opposition to American involvement in armed conflicts overseas that he believed were religious wars against Muslims.[7] In

---

[5] *Id.* at 1-2.

[6] *United States v. Mohamud*, 941 F. Supp. 2d 1303, 1308 (D. Or. 2013) ("Mohamud began thinking of taking part in violent jihad at the age of 15. He originally planned to wage war in the United States until a dream refocused him on Yemen; he wrote three articles in 2009 for Jihad Recollections, an on-line magazine promoting violent jihad against Americans; and he had lengthy email conversations with two men the FBI believed promoted terrorism.").

[7] *United States v. Mohamud*, 843 F.3d 420, 426 (9th Cir. 2016), *cert. denied*, 138 S. Ct. 636, 199 L. Ed. 2d 541 (2018) ("During this time period, Mohamud wrote four

other words, his clear intent was to retaliate against American foreign policy by killing people and damaging property – government and civilian – in the city of Portland.

Additionally, Pioneer Courthouse Square is located in the center of downtown Portland, Oregon. Adjacent to the square are several buildings of government property, both federal and local. Shown here:

---

articles for *Jihad Recollections*. Among other things, the articles recommended physical exercise to prepare for war with the West and analyzed Europe's vulnerability to a jihadi attack. Mohamud's initial drafts of these articles contained more incendiary content. For example, Mohamud praised the proficiency of the September 11, 2001, hijackers who 'hit them so fast the Americans became dumbfounded,' the 2008 Mumbai attackers, who were 'a great display of quickly entering the arena of battle and just decimating the kuffar [unbelievers],' and the fighters in Afghanistan who attacked landing American helicopters and then 'finish[ed] off the wounded American soldiers.'"); at 423–249 ("Mohamud said that 'originally he had planned to wage war within the United States,' but then he dreamt that he traveled to Yemen, received training, and went to Afghanistan where he led an army against the kuffar or the unbelievers.'"); at 429 ("Mohamud exchanged emails with a friend in Afghanistan.").



The Square is named after Pioneer Courthouse, where the U.S. Court of Appeals for the Ninth Circuit regularly holds oral argument.[8] It also has several public transit stations (e.g. government property), which are owned and operated by the City of Portland.[9] Finally, the Christmas Tree lighting ceremony is held annually at a public square in the heart of the city. We can assume that public gatherings, such

---

[8] The Ninth Circuit held oral argument at this courthouse this month and listed the Pioneer Courthouse address as the location where the Circuit sits. *See* https://www.ca9.uscourts.gov/calendar/view.php?hearing=November - The Pioneer Courthouse, Portland Oregon&dates=5-9&year=2018.

[9] *See* https://trimet.org/.

as the tree lighting, routinely command the presence of government officials, particularly law enforcement.

Finally, the transcripts of the *Mohamud* sentencing hearing filed by the government[10] also demonstrate the defendant's intent to commit a federal crime of terrorism. The terrorism enhancement applied to Mohamud because he intended to retaliate against government conduct based on what he viewed as a holy war between Americans – waged by the American government – against Muslims overseas.[11]

Unlike the *Mohamud* case, Mr. Allen's crime is a civil rights conspiracy that targeted civilians based upon their race, religion, and country of origin. There is not sufficient evidence that his conspiracy had any substantial nexus to government persons, property, or conduct.

## II. The remaining cases involved defendants who intended to commit violent jihad in retaliation for government foreign policy and/or targeted public or government persons and property.

For the same reasons as *Mohamud*, there is little persuasive value in the remaining cases cited by the government. If they have any value, it leans towards the defense position because these cases are so factually distinct from our case.

---

[10] D.E. 470-1.

[11] *Id.* at 8 ("We know that his contacts with terrorists overseas were substantial and not insignificant."); at 9 ("He was given multiple opportunities to back out, even though in many respects that's not the role of an al-Qaeda operative played by the FBI…"); at 56 ("I want everyone to know that Islam does not preach extremist terroristic hate and to kill innocent people.").

6

For all but two of the cases cited other than *Mohamud*, the government only provided brief descriptions of the cases with no supporting case documents. There is nothing from the descriptions that proves the defendants in these cases specifically targeted civilians persons and property and, more importantly, that the defendants' targets were evidence of their intent.

The opposite is true. All of the cases involved defendants who targeted either public or government persons or property. All of the cases had clear evidence of the defendants' intent to commit a federal crime of terrorism. And in none of these cases was the application of the terrorism enhancement disputed based on the targets of the crimes.

Significantly, in our case 305 and 312 West Mary Street are private property apartment complexes. This distinction is crucial to the inapplicability of the terrorism enhancement here.

Additionally, similar to *Mohamud*, the defendants in many of the cases below intended to wage violent jihad in and against the United States. The evidence of their intent to do so was crystal clear. These defendants targeted American persons and property, both civilian and government, as part of an ideology that preached retaliation against American foreign policy. They wanted to kill Americans because they believed the American government was waging war overseas against their religious faith. They targeted public venues, both civilian and government. The application of the terrorism enhancement was not even really disputed in these

7

cases. This makes these cases so factually distinct that they are not legally helpful to the Court here.

### A. *United States v. Shazad* – Southern District of New York

The "Times Square Bomber" targeted a public square that is popular with tourists in Manhattan. In the center of Times Square is a recruiting center for the United States military, shown here:



Shazad desired to wage violent jihad and was clear about his intent to retaliate against government conduct. During his sentencing hearing, he purportedly said:

> I want to plead guilty and I'm going to plead guilty 100 times forward because until the hour the US pulls its forces from Iraq and Afghanistan and stops the drone strikes in Somalia and Yemen and in Pakistan and stops the occupation of Muslim lands and stops Somalia and Yemen and in Pakistan, and stops the occupation of Muslim lands, and stops killing the Muslims and stops reporting the Muslims to its government, we will be attacking US, and I plead guilty to that.[12]

---

[12] *See* https://www.theguardian.com/world/2010/sep/19/times-square-bomber.

This statement again demonstrates why the *Shazad* case is distinct from our case. Shazad wanted to attack Americans to influence the government's policy and conduct. He was radicalized by the wars in Iraq and Afghanistan, and he demanded the government withdraw forces from those and other conflicts. His terrorism crimes were laser focused on his intent to take action in retaliation to government conduct; there is no evidence that Mr. Allen's conduct had the same intent.

### B. *United States v. Rahimi* – Southern District of New York

The "Chelsea Bomber" detonated bombs on public streets in New York City.[13] He "wanted to be part of jihad" and he felt targeted for being a Muslim in America.[14] Rahimi was "motivated by violent ideology espoused by terrorist leaders like Usama Bin Laden and groups like al Qaeda, Islamic State in Iraq and al Sham (ISIS), and al Qaeda in the Arabian Peninsula."[15] His attack was the culmination of his pursuit to follow these groups' directives "to carry out jihad, or holy war, against the United States and kill as many Americans as possible."[16]

Like Mohamud and Shazad, the evidence of Rahimi's intent was clear – to commit acts of terrorism to retaliate against American government conduct. Unlike this case, the evidence of Rahimi's intent was not overwhelming and not disputed.

---

[13] D.E. 470 at 2.

[14] https://www.cnn.com/2018/02/13/us/rahimi-sentence-chelsea-bomber/index.html.

[15] 16-cr-760-RMB, D.E. 188 at 1.

[16] *Id*.

9

Again, this case provides no value to the Court in its determination whether to apply the terrorism enhancement.

### C. *United States v. Suarez* – **Southern District of Florida**

The defendant targeted public beaches in Key West, Florida.[17] He also desired to wage violent jihad and his convictions included being guilty of providing material support to a foreign terrorist organization, ISIS.[18] He "professed membership in, and allegiance to, a foreign terrorist organization, the Islamic State, and sought to recruit like-minded individuals for the claimed purpose of carrying out attacks."[19]

This case provides no persuasive value to the Court here. Providing material support to foreign terrorist organizations, and attempting to carry out attacks in their name, was clear evidence of Suarez's intent. He targeted a public beach to kill Americans in retaliation for government conduct. The actual target here was ancillary to the additional evidence of his intent to "wage violent jihad."

### D. *United States v. Aldawsari* – **Northern District of Texas**

The defendant targeted both government persons and property and public spaces. Aldawsari became "committed to 'jihadist operations' and compiled a list of targets for bombing attacks."[20] His targets included the Dallas residence of former

---

[17] D.E. 470 at 2.

[18] 18 U.S.C. § 2339B(a)(1).

[19] 15-cr-10009-JEM, D.E. 169 at 3-4.

[20] *United States v. Aldawsari*, 740 F.3d 1015, 1017 (5th Cir. 2014).

President George Bush (private property/government person), and the Cotton Bowl, which is owned by the City of Dallas and located at the site of the Texas State Fair.[21]

The Fifth Circuit decision makes no mention whether Aldawsari knew the Cotton Bowl is government property. But certainly he targeted the residence of George W. Bush because he knew Mr. Bush was a former President of the United States. Like the other cases above, this case did not provide any analysis regarding the application of the terrorism enhancement that is helpful to the Court here because by targeting a former President, the evidence of Aldawsari's intent was clear – to retaliate for government policy and conduct.

### E. *United States v. El Bahnasawy* – Southern District of New York

The defendant was a Canadian citizen who pledged allegiance to ISIS, worked online to support ISIS's recruitment and attack planning efforts, and plotted with fellow ISIS's supporters to carry out bombings in New York City.[22] His convictions included being guilty of providing material support to a foreign terrorist organization, ISIS. His targets were public spaces, including government property, in New York City, such as: Times Square, public subway system, and public concert venues.[23] Like the other cases above, this case provides no value to the Court in resolving the issue before it.

---

[21] *See* https://fairpark.org/index.php/en/.

[22] 16-cr-376-RMB, D.E. 99 at 6.

[23] D.E. 470 at 2-3.

### F.  *United States v. Garey* – Middle District of Georgia

The targets in the *Garey* case included government property, such as City Hall in Macon, Georgia[24] and an interstate highway.[25] Like the cases above, when the evidence supports that a defendant targeted government persons and property, the analysis whether to apply the terrorism enhancement based on the targets was not litigated in *Garey*. Presumably, that is because the evidence of the defendant's intent was clear.

The issue in *Garey* was whether the definition of a "federal crime of terrorism" for purposes of the terrorism enhancement includes conduct that transcends national boundaries.[26] The *Garey* court, affirmed by the Eleventh Circuit, concluded the offense conduct does not have to transcend national boundaries to be a federal crime of terrorism.[27]

Neither the district nor appellate court in *Garey* faced the same issue present here. That is likely because it was obvious by the target selection (including government persons and property) that the defendant's conduct was "calculated to influence or affect the conduct of government by intimidation or coercion, or to

---

[24] *Id.* at 3.

[25] *United States v. Garey*, 383 F. Supp. 2d 1374, 1376 (M.D. Ga. 2005), aff'd, 546 F.3d 1359 (11th Cir. 2008).

[26] *Id.* at 1377.

[27] *United States v. Garey*, 546 F.3d 1359, 1363 (11th Cir. 2008) ("we conclude the definition of a 'federal crime of terrorism' does not require the offense conduct to transcend national boundaries.").

retaliate against government conduct."[28] Indeed, the government's filing here leaves no doubt that Garey intended to influence conduct of government by intimidation because, as it stated, Garey threatened to bomb these buildings "unless the government paid him to stop."[29]

### G. *United States v. Wright* – Northern District of Ohio

The *Wright* case was discussed at length during oral argument. In several ways, it is clearly distinguishable from our case for purposes of applying the terrorism enhancement.

The government presumably included *Wright* in its list of cases because "the defendants planned to bomb a '**non-federal** bridge.'"[30] This fact makes no difference for purposes of the terrorism enhancement. The definition of "federal crime of terrorism" does not include any language limiting "government" to the *federal* government; it simply says "government."[31]

In *Wright*, the defendants decided to detonate "explosives at the base of the Route 82 bridge in Brecksville, part of the **Ohio state highway system**."[32] The

---

[28] 18 U.S.C. § 2332b(g)(5)(A).

[29] D.E. 470 at 3.

[30] *Id.* (emphasis added).

[31] 18 U.S.C. § 2332b(g)(5)(A).

[32] *Wright*, 747 F.3d at 405-406 (emphasis added).

13

Ohio state highway system is government property so the target was evidence of the *Wright* defendants' intent to commit a federal crime of terrorism.

The government acknowledged the defendants in *Wright* "'expected the government would respond to the bridge-bombing' by taking new security measures, anticipated combat with law enforcement officers, and considered other federal facilities as possible targets."[33] There are no similar facts in our case, which demonstrate why the *Wright* defendants received the terrorism enhancement when they clearly intended to "affect the conduct of government by intimidation or coercion."

## H. *United States v. Abdulmutallab* – Eastern District of Michigan

The "underwear bomber" attempted to detonate a bomb aboard a commercial airplane that departed from Amsterdam and was inbound for Detroit on Christmas Day in 2009.[34] The defendant was sent to the United States from Africa on a "martyrdom mission" as part of the "central conflict between al Qaeda and the United States."[35] He was recruited, and inspired, by the radical cleric, Anwar al-Awlawki in Yemen.[36] His crimes included a Conspiracy to Commit an Act of

---

[33] D.E. 470 at 3.

[34] *United States v. Abdulmutallab*, 739 F.3d 891, 895 (6th Cir. 2014)

[35] Scott Shane, "Inside Al Qaeda's Plot to Blow Up an American Airliner," NEW YORK TIMES (Feb. 22, 2017).

[36] *Abdulmutallab*, 739 F.3d at 902 ("Abdulmutallab studied the teachings of the radical Imam Anwar Awlaki, which prompted his decision to travel to Yemen for the purpose of meeting Awlaki. … While in Yemen, Abdulmutallab agreed to carry out the martyrdom mission.").

14

Terrorism Transcending National Boundaries.[37] There is simply no factual comparison of the *Abdulmutallab* case to our case.

Although Abdulmutallab's bomb was intended to detonate inside the cabin of an airplane that was the property of Northwest Airlines, it cannot be said that the target of this case was purely civilian persons and property. We don't know who was on that airplane. Also, aviation and commercial airlines inside the United States are inextricably intertwined with the federal government, through regulation by the Federal Aviation Administration and security through the Department of Homeland Security.

More important, the target in *Abdulmutallab* was irrelevant to the application of the terrorism enhancement. The evidence of his intent was overwhelming. This case provides no value to the Court here.

### I. *United States v. Crawford* – **Northern District of New York**

The government's supplemental notice included the *Crawford* case where, it said, "the defendants' underlying conduct was an attack on civilians." But the exhibits submitted by the government with this supplemental notice counter that claim.

The defendant here also targeted government persons and property. He "identified Muslims and others (including President Obama, Governor Cuomo, and the United Nations General Assembly) as intended targets, and researched locations for the first uses of his radiation weapon, including local mosques and

---

[37] 18 U.S.C. §§ 2332b(a)(1) and 2332b(a)(2).

Islamic centers in the Albany, New York area."[38] He also sought contacts with a foreign intelligence service – the Israeli intelligence agency, Mossad.[39]

Again, unlike Mr. Allen, the defendant in *Crawford* specifically targeted the government as part of his criminal plot. Targeting the government, including the President of the United States, provided clear evidence of his intent to commit a federal crime of terrorism. Similar evidence is not present here.

### III. In comparing the list of cases submitted by the government to facts of this case, the Court should not rely on the government's citation to "real time" draft trial transcripts.

Finally, to the extent the Court relies on the government's recitation of the facts in its sentencing memo to make comparisons to these cases, or for any other purpose of analysis regarding the applicability of the terrorism enhancement, we ask the Court to give no weight to the government's citation to trial testimony from "real time" transcripts.[40] We make this point being mindful of the Court's directive regarding the use of "real time" transcripts, and we also note we first raised this same concern about the use of "real time" transcripts in the first round of post-trial filings.[41]

---

[38] D.E. 471-1 at 8.

[39] *Id.* at 9.

[40] D.E. 449 at 19-29.

[41] D.E. 422 at n. 8.

**Conclusion**

The additional authorities submitted the government do not support its position that the terrorism enhancement applies in this case. Rather, based on the significant factual differences between those cases and this case, these cases provide little persuasive value at all, or to the extent they have value, they all support the defense position this enhancement does not apply. We ask the Court to sustain the defense objection to the terrorism enhancement.

Respectfully submitted,

s/ Melody Brannon
MELODY BRANNON, #17612
Federal Public Defender for the
District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785/232-9828
Fax: 785/232-9886
Email: melody_brannon@fd.org


s/ Rich Federico
RICH FEDERICO, #22111
Assistant Federal Public Defender
Federal Public Defender
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Email: rich_federico@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2018, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all interested parties.

s/ Melody Brannon
MELODY BRANNON, #17612

s/ Rich Federico
RICH FEDERICO, #22111